**CSREEDER, PC**
Christopher S. Reeder, Bar No. 193041
chris@csrlawyers.com
Elan Bloch, Bar No. 284530
elan@csrlawyers.com
11766 Wilshire Blvd., Suite 1470
Los Angeles, CA 90025
Telephone: 310-861-2470

**JEFFER MANGELS BUTLER & MITCHELL LLP**
Dan P. Sedor, Bar No. 139091
dsedor@jmbm.com
Vatche Zetjian, Bar No. 265473
vzetjian@jmbm.com
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Telephone: 310-203-8080

Attorneys for Plaintiffs,
ARF DASHNAKTSUTYUN, WESTERN
U.S.A. and ARMENIAN CULTURAL
FOUNDATION

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ARF DASHNAKTSUTYUN, WESTERN U.S.A., a California Mutual Benefit Corporation; ARMENIAN CULTURAL FOUNDATION, a California Nonprofit Public Benefit Corporation, | Case No. 2:21-cv-05594 **COMPLAINT FOR:** |
| Plaintiffs, | **1) CIVIL RICO - VIOLATION OF 18 U.S.C. § 1961 ET SEQ [RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT]** |
| v. | |
| ARMENIAN REVOLUTIONARY FEDERATION WUSA, INC., a California Mutual Benefit Corporation; ACF CENTRAL WUSA, INC., a California Public Benefit Corporation; ACF CHAPTERS WUSA, INC., a California Public Benefit Corporation; DARON KACHATOURIAN, an individual; | **2) CONSPIRACY TO COMMIT CIVIL RICO - VIOLATION OF 18 U.S.C. § 1962(d) [RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT]** |
| | **3) LANHAM ACT VIOLATION [TRADEMARK INFRINGEMENT] [15 U.S.C. § 1125(a)]** |
| | **4) LANHAM ACT VIOLATION [UNFAIR COMPETITION/FALSE** |

1
COMPLAINT

MELKON MELKONIAN, an individual; ROSTOM AINTABLIAN, an individual; VICKEN MOSES, an individual (aka VICKEN BABIKIAN); KARO KHANJIAN, an individual; KNAR KITABJIAN, an individual; GEV ISKAJYAN, an individual; MIGANOUSH MELKONIAN, an individual; MKHITAR MORADIAN, an individual; VICKEN SOSIKIAN, an individual; STEPAN BOYAJIAN, an individual; HRAYR GARABETIAN, an individual, and DOES 1-10, inclusive,

Defendants.

ADVERTISING] [15 U.S.C. § 1125(a)]

**5) LANHAM ACT VIOLATION [FALSE DESIGNATION OF ORIGIN] [15 U.S.C. § 1125(a)]**

**6) FALSE ADVERTISING [CAL. BUS. & PROF. CODE § 17500 ET. SEQ.]**

**7) VIOLATION OF UNFAIR BUSINESS PRACTICES ACT [CAL. BUS. & PROF. CODE § 17200 ET. SEQ.]**

**8) BREACH OF FIDUCIARY DUTY**

**9) AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

**10) TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

**11) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

**12) CONVERSION**

**13) ACCOUNTING**

**14) PRELIMINARY INJUNCTION**

**15) DECLARATORY RELIEF**

**DEMAND FOR JURY TRIAL**

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

Plaintiffs ARF DASHNAKTSUTYUN, WESTERN U.S.A. (formerly Armenian Revolutionary Federation-Dashnaktsutiun, Western U.S.A.), a California Mutual Benefit Corporation (hereinafter "ARFDW"), and ARMENIAN CULTURAL FOUNDATION, a California Nonprofit Public Benefit Corporation ("ACF") (ARFDW and ACF collectively referred to herein as "ARFDW/ACF" or "Plaintiffs") allege against Defendants ARMENIAN REVOLUTIONARY FEDERATION WUSA, INC., a California Mutual Benefit Corporation (the "ARF Imposter Corporation"), ACF CENTRAL WUSA, INC., a California Public Benefit Corporation, and ACF CHAPTERS WUSA, INC., a California Public Benefit Corporation (the "ACF Imposter Corporations"), MELKON MELKONIAN, ROSTOM AINTABLIAN, VICKEN MOSES (aka VICKEN BABIKIAN), KARO KHANJIAN, KNAR KITABJIAN, GEV ISKAJYAN, MIGANOUSH MELKONIAN, MKHITAR MORADIAN, VICKEN SOSIKIAN, STEPAN BOYAJIAN, and HRAYR GARABETIAN (collectively the "Imposter Central Committee"), DARON KACHATOURIAN, and DOES 1 through 10, inclusive (collectively, "Defendants" or "Imposter Enterprise"), the following:

## <u>INTRODUCTION</u>

1.     ARFDW is a 130-year-old, grassroots (nonprofit) institution formed to advance the rights, culture, heritage and interests of the Armenian community.

2.     ACF is an affiliate of ARFDW (and also a nonprofit) which works in close conjunction with the ARFDW to promote cultural and educational programs and initiatives for Armenian Americans, as well as fundraise, and manage facilities (it owns), utilized by both corporations to fulfill their humanitarian objectives.

3.     Recently, a rogue group, comprised in large part of former officers of ARFDW and ACF as well as others, have created an Imposter Enterprise, comprised of individuals as well as corporations with confusing similar names, in order to deceive the membership and supporters of ARFDW/ACF, as well as the public, into providing the Imposter Enterprise with "donations," thinking that they are supporting the work of ARFDW/ACF and to otherwise steal the assets of ARFDW/ACF.

4.     As detailed herein, these actions have included:

a. Stealing ARFDW's confidential information, including its membership lists, and seizing control over its social media profile (including its Facebook account) to engage in a campaign of misrepresentation and to sow confusion among ARFDW/ACF's members as to the true leadership of these organizations;

b. The unauthorized use of ARFDW's and ACF's trademarks both to impersonate the organizations and to create fake fundraisers for the purpose of diverting funds intended for ARFDW and ACF to newly formed, separate entities, set up for the benefit of Defendants' Imposter Enterprise;

4

COMPLAINT

c.  The incorporation of fake charitable corporations, operating out of an auto parts and upholstery shop in Panorama City, California, with intentionally confusing similar names to the ARFDW and ACF in order to improperly divert funds and donations intended for ARFDW and ACF;

d.  The theft of money from accounts held in the name of the ACF;

e.  The active physical intimidation of members of the ARFDW and ACF, including from conducting meetings and other constitutionally protected activities;

f.  The defamation of members of the Board of Directors for the ARFDW and ACF, and persons associating with them, through online posts and written correspondence;

g.  Falsely representing to be the Board of Directors of ARFDW and ACF in order to deceive the ARFDW/ACF membership and general public as part of a scheme and artifice to defraud; and,

h.  Purporting to publicly purge the ranks of 100 active members of ARFDW/ACF with no authority to do so and calling a fake ARFDW/ACF "Regional Convention" of people loyal to the Imposter Enterprise's agenda and with no authority to do so in order to deceive the ARFDW/ACF membership and the general public.

5.  In short, Defendants' Imposter Enterprise has, through a myriad of actions, attempted to hijack ARFDW/ACFs' organization, donors, and assets through brazenly unlawful and fraudulent conduct, constituting a pattern of racketeering activity, now necessitating this action.

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

## **THE PARTIES**

6.     ARFDW is a nonprofit Mutual Benefit Corporation that has existed for more than a century, but which was formally incorporated in California in March 2006.  ARFDW's principal place of business is located at 104 N. Belmont Street in Glendale, California.  ARFDW is composed of 18 chapters, approximately 1,400 members, and managed by a Board of Directors, which is referred to as the ARFDW Central Committee.

7.     ARFDW's Chapters are known by the following names and located in the following cities and municipalities: (i) Aharonian - Glendale, California; (ii) Aram Manoukian - Torrance, California; (iii) Armen Karo - Orange County, California; (iv) Zavarian - La Crescenta, California; (v) Lernavayr - Pasadena, California; (vi) Dro - Montebello, California; (vii) Rosdom - West San Fernando Valley, California; (viii) Aghbalian - Burbank, California; (ix) Karekin Njdeh - Hollywood, California; (x) Tehlirian - Fresno, California; (xi) Krisdapor - San Francisco, California; (xii) Arshavir Shiragian - North San Fernando Valley, California; (xiii) Ishkhan - Las Vegas, Nevada; (xiv) Sardarabad - San Jose, California; (xv) Serob Aghpure - Houston, Texas; (xvi) Papken Seuni - North Hollywood, California; (xvii) Kevork Chavoush - Phoenix, Arizona; and (xviii) Shant Student Association (no specific address).

8.     The ACF is a nonprofit Public Benefit Corporation incorporated in California in July 1976.  ACF shares the same principal place of business with the ARFDW and works in close conjunction and cooperation with the ARFDW to promote cultural and educational growth in the Armenian community.  It is managed by a Board of Directors which is identical to the Board of Directors for the ARFDW.

/ / /

9.     Defendant Armenian Revolutionary Federation WUSA, Inc. (which will at times herein be referred to as the "**ARF Imposter Corporation**") is a California Corporation, incorporated on or about February 8, 2021, as a nonprofit mutual benefit corporation in order to perpetuate Defendants' scheme and artifice to defraud as set forth in this Complaint.  As detailed below, the ARF Imposter Corporation was formed for the express purpose of improperly diverting funds belonging to and intended for ARFDW/ACF to Defendants and is knowingly in possession of stolen funds.

10.     According to the California Secretary of State, the corporation was incorporated by Defendant Melkon Melkonian, its registered agent for service of process, and has as its officers Defendants Daron Kachatourian (C.E.O.), Rostom Aintablian (Secretary), and Vicken Moses (C.F.O.), who were all residents of the State of California during the relevant periods described herein.  The entity originally listed as its principal place of business (in its articles of incorporation, filed with the California Secretary of State), Melkon Melkonian's law firm address registered with the State Bar of California at 16530 Ventura Blvd., Suite 555 in Encino, California. However, the corporation's business address was subsequently updated in March 2021 to 13820 Saticoy Street, in Panorama City, California, the business address for an auto body upholstery supply shop named "Vic's," owned by Defendant Vicken Moses (aka Vicken Babikian).

11.     Defendants ACF Central WUSA, Inc. and ACF Chapters WUSA, Inc. (which will at times herein be referred to as the "**ACF Imposter Corporations**" and collectively with the ARF Imposter Corporation as the "**Imposter Corporations**") are California corporations, incorporated on or about March 25, 2021, also by Defendant Melkon Melkonian, its registered agent for service of process.  Like the ARF Imposter

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

Corporation, these entities were formed to perpetuate Defendants' scheme and artifice to defraud. The principal places of business listed for the ACF Imposter Corporation is also Defendant Vicken Moses' auto body shop in Panorama City, California.

12. Defendants Rostom Aintablian, Karo Khanjian, Hrayr Garabetian, Stepan Boyajian, Knar Kitabjian, Gev Iskajyan, Miganoush Melkonian, Mkhitar Moradian, Vicken Moses (aka Vicken Babikian), Vicken Sosikian, and Melkon Melkonian (collectively, the "**Imposter Central Committee**"), were, at all relevant times stated herein, individuals residing in the State of California and performed the acts described herein, which were directed to and/or had effects in the County of Los Angeles, State of California. Moreover, each of these individual Defendants are or were members of the Imposter Central Committee, as defined herein, and participated in, authorized and/or ratified the acts described herein on behalf of the Imposter Central Committee, and ultimately for the benefit of the Imposter Corporations and Imposter Enterprise.

13. Plaintiffs are not aware of the true names and capacities of the individuals or entities named herein as DOES 1 through 10, inclusive, and therefore identify these DOE Defendants by such fictitious names. Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously named Defendants are in some manner responsible for the occurrences alleged herein and proximately caused Plaintiffs' damages and injuries.

14. Plaintiffs further allege that each of the Defendants referenced herein, including DOES 1 through 10, were, at all relevant times, the agents, servants, employees, principals, joint venturers, alter egos, co-conspirators and/or partners of each other and that each defendant referenced herein was acting within the scope of authority conferred by all other defendants, whether said authority was actual or

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

1    apparent.

3    **<u>JURISDICTION AND VENUE</u>**

4    15.    This Court has subject matter jurisdiction over this matter due to the federal questions presented herein, including pursuant to Section 43(a) of the Lanham Act (15 U.S.C. § 1125) and the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1965).

16.    This Court has personal jurisdiction over the Defendants named herein as each performed acts, which form the basis of ARFDW's and ACF's claims, in the State and/or reside and/or are domiciled in the State.

17.    Moreover, as the events giving rise to the claims herein occurred in the judicial district where this Court is situated (including actions designed to infringe on ARFDW's and ACF's marks), and as this District Court is situated in the district in which Defendants (who performed predicate acts identified under 18 U.S.C. § 1961 et seq.) all reside and/or are domiciled, venue is proper.  *See* 28 U.S.C. § 1391(b).

18.    Finally, this Court has supplemental jurisdiction over all State-based claims set forth herein, as such claims are so related to claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy. *See* 28 U.S.C. § 1367.  For example, and as set forth in greater detail below, Defendants' theft via unauthorized wire transfers and cashiers' checks from bank accounts held in the name of Plaintiff ACF to the Imposter Enterprise in the amount of hundreds of thousands of dollars support both the predicate acts underpinning Plaintiffs' claims for civil RICO and conspiracy to commit civil RICO

alleged herein as well as Plaintiffs' State-based claim for conversion. Similarly, the acts of individual Defendants, who owed fiduciary obligations to ARFDW/ACF as former officers and directors of ARFDW/ACF or who knew of the existence of these fiduciary duties, in forming the Imposter Corporations and Imposter Enterprise, perpetuating the falsehood that the Imposter Corporations and ARFDW/ACF were one and the same through use of Plaintiffs' trademarks, and conspiring with other Defendants to carry out a fraud on the public, support both ARFDW/ACF's Lanham Act claims for Unfair Competition/False Advertising, Trademark Infringement and False Designation of Origin, as well as ARFDW/ACF's State-based claims for Violations of California's Unfair Business Practices Act, Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, and Tortious Interference with Contract and Prospective Economic Advantage, among others.

## **GENERAL ALLEGATIONS**

### *Background of the ARFDW and ACF*

19.    To fully understand the actions and motivations of Defendants and the extent of their misconduct, the following provides context regarding ARFDW/ACF's operations and history:

20.    Beginning in 1915, the Armenian Genocide tragically resulted in the deaths of approximately 1.5 million people in the Ottoman Turkish Empire, as hundreds of thousands of survivors were dispersed all over the world. Over the ensuing years, these individuals created and organized what is referred to today as the Armenian Diaspora.

21.    Regrettably, the Genocide was followed by decades of occupation over Armenia, with approximately 3 million individuals living in Soviet Armenia, and as of

today, approximately 8 million Armenians living in the Diaspora.

22.     The United States, and, more specifically, Southern California, was among one of the primary locations in which Armenian nationals settled and in which Armenians developed the Diaspora.

23.     In fact, today, Southern California contains among the largest population of Armenians anywhere in the world outside of Armenia.

24.     As Armenians fled political and religious persecution to locations throughout the world, certain organizations concurrently developed within diasporic communities with the stated mission of preserving Armenian community and heritage.

25.     These organizations gained significant influence in the Armenian community, having served their roles for over 70 years (including from 1920 to 1991) as Armenia sought to regain its independence (from the Soviet Union) and thereafter.

26.     One such organization, whose purpose was to coordinate amongst different groups of Armenians worldwide, was the Armenian Revolutionary Federation ("ARF").

27.     Despite its partially similar name and shared ideals, the ARF and ARFDW are entirely separate entities.

28.     Indeed, the ARFDW is an autonomous organization, which has a membership consisting of Americans of Armenian heritage residing in the Western United States and operates exclusively pursuant to its own Bylaws and in conformance with California and United States law.  The ARF, on the other hand, is an organization based out of Armenia, subject to the laws of that country.

29.     As such, in its Bylaws, the ARFDW has always relied on and held, as a fundamental tenet, "organizational decentralization," meaning that it (and each organization that shares a loose affinity with (but not affiliation with) the ARF

COMPLAINT

throughout the world) operates independently and according to its own laws.

30.    In fact, the limited overlap between the ARF and ARFDW generally occurs as the entities come together, once every 4 years, during which the ARF hosts a "World Congress," and during which members are selected to a committee of the ARF, referred to as the "ARF Bureau."

31.    The ARF Bureau is the body designed to coordinate and facilitate communications among the various Armenian groups throughout the world and promote overall goals and ideology among these groups.

32.    Other than the World Conference, historically, the ARF's only other interaction with the ARFDW occurs when, from time to time, it communicates with the leadership of the ARFDW to share certain news of national significance in Armenia and the impact of such events on matters identified as priorities during the World Congress.

33.    Accordingly, while the ARF Bureau's communications have historically had some influence in setting agendas and priorities, neither the ARF nor the ARF Bureau have any legal authority over or serve any legal function with regard to the ARFDW and the ACF.

34.    This separateness has become increasingly important in recent years as the ARF has developed into an increasingly active political party in Armenia, and therefore ensuring the ARFDW's and ACF's independence is crucial to ensuring that the organizations continue to remain compliant with California and United States law and can perform their work free from political influence.

/ / /

/ / /

/ / /

*The Operations of ARFDW and its Bylaws*

35.     As set forth above, ARFDW is a Mutual Benefit Corporation, incorporated under the laws of the State of California, and is governed, *inter alia,* by its Bylaws, adopted in March 2006, the California Corporations Code (Cal. Corp. Code §§ 7110-8910), and United States law.   Indeed, as noted in the Preamble of its Bylaws, "[ARFDW] is an American organization. Based on the principle of [ ] organizational decentralization, the [ARFDW] is an independent organization.  Its membership consists of Americans or Armenian heritage residing in the Western region of U.S.A.  As a California nonprofit mutual benefit corporation, the [ARFDW] determines its own course of action and procedures."  Attached hereto as **Exhibit 1** is a copy of its Bylaws.

36.     As further detailed in its Bylaws, the ARFDW is managed by and through a Board of Directors, which is referred to in its Bylaws as the "Central Committee." (Ex. 1, Page 1, Article 2).

37.     As recognized in the ARFDW's Bylaws, the Central Committee:

(i)     "is the supreme executive board of the [ARFDW]" (Ex. 1, Page 9, Article 46);

(ii)    "directs the overall activities of the [ARFDW] and supervises the activities of the local bodies and organizational assemblies" (Ex. 1, Page 9, Article 48);

(iii)   "has the final authority regarding the interpretation of the bylaws and the decisions of the Regional Convention" (Ex. 1, Page 10, Article 56);

(iv)    "may dissolve local executive bodies or local assemblies if it deems their actions to be illegal, in breach of [the] bylaws, or counter to

[ARFDW] purposes" (Ex. 1, Page 10, Article 58); and

(v)  "In the case of disagreement amongst local executive bodies, the decision or opinion of the Central Committee is mandatory on the lower executive bodies." (Ex. 1, Page 10, Article 57).

38.  The Central Committee is a group composed of 5, 7, 9, or 11 directors elected at a "Regional Convention" held by the organization and convened every 2 years. (Ex. 1, Page 7, Article 40; Page 9, Article 47)

39.  In addition to the Central Committee, the ARFDW is composed of members which each subscribe to a particular ARFDW chapter (referred to in the ARFDW Bylaws as a "gomidehoutiune") based on location and pay dues (with certain exceptions for financially disadvantaged individuals). (Ex. 1, Pages 2-3, Articles 7-10)

40.  Each chapter (or gomidehoutiune) is also run and organized by its own local committee, which is referred to as a "gomideh." (Ex. 1, Page 2, Article 8)

41.  In advance of a Regional Convention, the Central Committee sends a noticed invitation to each gomideh, outlining the agenda for the convention, with explanations and directions to be circulated amongst the general membership of the organization.  (Ex. 1, Page 7, Articles 40)

42.  Generally speaking, the Regional Convention is composed of elected delegates from the Central Committee, the gomidehs (chapter local committees), and through General Membership Meetings of each of the chapters (Ex. 1, Pages 7-8, Articles 40-42) and at the Regional Convention, these delegates approve budgets and activities for the next two years, examine and approve the financial activities of the organization and elect the new Central Committee, among other things.  (Ex. 1, Page 8, Articles 43-44).

COMPLAINT

43.     Finally, while the ARFDW's Bylaws recognize that a World Congress is convened every 4 years, during which time delegates of organizations with a loose affinity with ARF elect an ARF Bureau, whose main responsibilities are to "function as the coordinator of ARF activities worldwide" (Ex. 1, Page, 12, Article 78), the Bylaws acknowledge and state that the ARF Bureau's function is merely ministerial and has no legal force or effect on the ARFDW, including by noting that:

(i)     "The Bureau … functions in compliance with the ARF principal of organizational decentralization, whereby ARF organizational regions – wherever they may be situated – determine their own course of action and procedures" (Ex. 1, Page 11, Article 78);

(ii)    "The ARF organizations of outside regions and countries have no authority and no jurisdiction over [ARFDW]" (Ex. 1, Page 11, Article 70); and,

(iii)   "The ARF organizations of outside regions and countries are not permitted to implement their decisions and carry out their activities within the jurisdiction of [ARFDW]." (Ex. 1, Page 11, Article 71)

**The Operations of ACF**

44.     As set forth above, the ACF works closely with the ARFDW.

45.     Generally speaking, the ACF manages and owns real property and performs charitable work with the purpose of promoting and encouraging Armenian culture and assisting Armenians with education and welfare programs.

46.     The ACF also owns and manages several facilities out of which chapters of ARFDW operate and, throughout its history, the Board of Directors for the ACF

has been identical to the Board of Directors of the ARFDW.

### *2018 Election of ARFDW Central Committee*

47.    The chronology of events underpinning the claims in this action commence in or around 2018, with the election of members to the Central Committee of the ARFDW (and thus, to the ACF as well).

48.    At the 52nd Regional Convention of the ARFDW, held at the end of June/beginning of July 2018, in conformance with its Bylaws, the following 11 members were elected to the Central Committee of the ARFDW and appointed with the following titles and responsibilities:

     i.   Carmen Ohanian, Chairperson
     ii.   Avedik Izmirlian, External Relations
    iii.   Garo Ispendjian, Community Representative
    iv.   Garo Madenlian, Gomideh Relations
     v.   Levon Kirakosian, Secretary
    vi.   Koko Topalian, Treasurer
   vii.   Razmig Haroun, Advisor
  viii.   Steve Dadaian, Advisor
    ix.   Razmig Shirinian, Advisor
     x.   Toros Kejejian, Advisor
    xi.   Melkon Melkonian, Advisor

49.    The election of these individuals to the Central Committee was subsequently memorialized in a Circular sent to the Gomidehs and the General Membership, a true and correct copy of which is attached hereto as **Exhibit 2.**

### *Commencement of Unlawful Intervention and Plan to Interfere*

50.    Following the election of the Central Committee in 2018, the ARFDW and ACF operated efficiently and according to long-established routines, directed

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

and managed by the aforementioned Central Committee.

51.    However, in September 2019, the ARF Bureau circulated an unprecedented correspondence, which caused great discord and a splintering in the California-Armenian community.

52.    Specifically, without any legal authority, the ARF Bureau issued an *ultra vires* "edict," via letter, dated September 13, 2019, wherein the ARF Bureau purported to unilaterally appoint 4 new Central Committee members to the ARFDW's Central Committee, in addition to the existing 11-member Central Committee that was duly and democratically elected in 2018.

53.    The letter was circulated to ARFDW's membership and stated that the purpose of the edict was to more closely align the ARFDW's principles with those of the Armenian community at large (meaning, abroad).

54.    The "appointed" individuals in the letter were:

  i. Rostom Aintablian;
  ii. Aida Dimejian;
  iii. Hrayr Garabetian; and,
  iv. Stepan Boyajian

55.    The letter and its attempted hijacking of the Central Committee was unlawful on numerous accounts.

56.    Among other things, the purported appointment contravened the clear and express provisions of the organization's Bylaws, by not only disregarding the established and governing mechanism for electing Central Committee members, but disregarding the clear separation between the ARFDW and the ARF as well.

57.    Frankly, neither the ARF nor ARF Bureau had any authority whatsoever to dictate governance obligations on ARFDW/ACF as the organizations are legally

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

totally separate.

58.    In fact, the clear separation between the ARFDW and the ARF is not only carefully laid out in the Bylaws (as summarized above), but was the subject of focused examination in 2012, in response to an inquiry by the US Department of Justice, investigating whether the ARFDW was supposed to register as a foreign agent under the Foreign Agents Registration Act (22 U.S.C. § 611 *et seq.*) ["FARA"].

59.    Notably, based on many of the representations made in response to the US Department of Justice's inquiry, which incorporated the same details of governance as set forth herein, including, *inter alia,* that the ARFDW does not act under the direction or control of the ARF, that its members are located within the Western United States, that the entity is governed by a Central Committee, and that the entity does not engage in political activities inside or outside of the United States, the US Department of Justice found no need for ARFDW to register under FARA and that the entities are indeed, separate, with no authority to act for the other.

60.    Additionally, setting aside that the ARF Bureau had no authority whatsoever to direct the ARFDW, the persons purportedly "appointed" in no way reflected the desires of the organization's membership (as they were not democratically elected), and the supposed "appointments" did not even conform to the logistical aspects of the organization's governance, as the addition of new Central Committee members exceeded the maximum number of Central Committee members permitted under its Bylaws.

61.    In short, the ARF Bureau letter was nothing more than an unlawful attempt by a third party with no governance rights to steer the substantial assets,

influence, and authority of the ARFDW and ACF to groups based in Armenia, and a reaction to the ARFDW/ACF's repeated refusals to capitulate to certain requests by the ARF Bureau.

62.   Notwithstanding the foregoing, the ARF Bureau's edict left the ARFDW's membership in a state of disarray.  This was due to the fact that while the ARF Bureau has no legal authority over the ARFDW, its statements have historically been given deference by members of the ARFDW and regrettably, certain opportunistic members seized upon this set of circumstances to cause disruption in the organization for their own ends,  as evidenced below (and touted the false narrative that somehow the edict was controlling).

63.   In the wake of this discord and in order to keep "order in the ranks" (in the words of the Central Committee), the ARFDW allowed the aforementioned four individuals to participate in certain discrete and limited activities, hoping that the upcoming Regional Convention in 2020 would naturally resolve the attempted improper intervention by the ARF Bureau and resolve issues in the organization as a new Central Committee was formally elected.

64.   In the meantime, these four "appointed" individuals were not made official members of the Central Committee as provided in the Bylaws, were not provided any material assignments, and were not placed on any ARFDW subcommittees.

65.   In order to maintain the integrity of the organizations and their Bylaws, the Central Committee also attempted to delay any meaningful action requiring a vote until the forthcoming Regional Convention.

/ / /

***Further Attempts to Usurp Control over the ARFDW***

66.     In conformance with the Bylaws, on January 9, 2020, the Central Committee notified various chapters of the ARFDW, through their gomidehs, of the Central Committee's decision to hold a Regional Convention from April 30, 2020 to May 3, 2020 (at which time a new Central Committee would be elected) and delivered an agenda for the proposed Regional Convention.

67.     However, in the wake of the COVID-19 pandemic becoming widespread in the United States (in March 2020), the Regional Convention was indefinitely postponed.

68.     Accordingly, in the interim, the acting Central Committee continued to perform their role until such time as a Regional Convention could be safely rescheduled.

69.     Then, in September 2020, the Central Committee informed its membership that the Regional Convention would be held in early December 2020 (starting on December 3, 2020) and directed chapters to hold local General Meetings to elect delegates to attend the convention.

70.     At this time, it was apparent that the ARF Bureau's efforts to gain control of the Central Committee through a vote of its membership would not be successful, as the majority of elected delegates to the Regional Convention did not support the ARF Bureau. Accordingly, the ARF Bureau demanded that the Regional Convention be cancelled and concurrently, certain chapters supporting the ARF Bureau failed to hold General Meetings to elect delegates.  In response, while the Central Committee did not agree to cancel the Regional Convention, it elected to postpone the Convention several weeks until such time as all delegates were elected.

71.     However, fearing the ultimate outcome of the vote, before the Regional Convention was able to convene, the ARF Bureau, with no authority whatsoever, issued a new and even more improper unlawful edict, this time claiming it would unilaterally appoint an entirely new Central Committee to the ARFDW, as, in its words, the ARFDW had failed to do so in a timely manner under its Bylaws, among other contrived explanations.

72.     In a letter, dated December 27, 2020, the ARF Bureau decreed that the new members of the Board (i.e., Central Committee) would be:

    i.   Rostom Aintablian;
   ii.   Knar Kitabjian;
  iii.   Gev lskajyan;
  iv.   Hrayr Garabetian;
   v.   Miganoush Melkonian;
  vi.   Mkhitar Moradian;
 vii.   Vicken Babikian;
viii.   Stepan Boyajian;
  ix.   Vicken Sosikian;
   x.   Steve Dadaian; and,
  xi.   Melkon Melkonian

73.     This new edict led to further chaos within the organization, where members took sides, as the Central Committee repeatedly reminded its members of the fundamental tenets of the organization and the express provisions of the ARFDW's Bylaws.

74.     However, while the Central Committee attempted to instill order, the Bureau's appointed "Central Committee" (the "**Imposter Central Committee**") immediately and in conjunction with the edict delivered by the Bureau, sent its own letter to ARFDW's members attempting to confirm their appointment (*see* **Exhibit 3**) and even attempted to give the individual chapters direction for conducting meetings amongst themselves.

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

75.   As demonstrated below, these individuals had nefarious motives, including to divert funds and assets belonging to ARFDW/ACF to the Imposter Enterprise for their own benefit. In fact, members of the Imposter Central Committee would subsequently register imposter corporations with the California Secretary of State <u>to masquerade as ARFDW/ACF and engage in numerous instances of theft.</u>

76.   To push back against the tide of this unlawful action, re-instill confidence in its members that the ARF Bureau's appointment was invalid, and to uphold the democratic processes contemplated under the Bylaws of the organization, the Central Committee held its own emergency meeting on December 27, 2020, and agreed to hold an Emergency Regional Convention the following day, on December 28, 2020.

77.   At the Emergency Regional Convention, an election of the Central Committee was held where the following members were elected to the Central Committee:

    i.   Carmen Ohanian
   ii.   Garo Ispendjian
  iii.   Harut Mgrditchian
  iv.   Koko Topalian
   v.   Vahan Bezdikian
  vi.   Alik Ourfalian
 vii.   Levon Kirakosian
viii.   Toros Kejejian
  ix.   Sako Berberian
   x.   Shahen Derderian
  xi.   Arto Keuleyan

78.   Following the vote, the ARFDW local chapters were informed of the new Central Committee elections.

COMPLAINT

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

79.     However, with the uncertainty created by the various machinations of the ARF Bureau and Imposter Central Committee specified above, as well as challenges by certain individuals objecting to the validity of the Emergency Regional Convention, the organization was still in a state of disarray, which was exacerbated by the host of unlawful activity that immediately followed, as Defendants attempted to take control of the ARFDW and ACF by force.

80.     Specifically, as detailed below, members of the Imposter Central Committee, with the assistance of other named Defendants identified herein, formed the Imposter Corporations to masquerade as ARFDW/ACF, steal personal property from ARFDW/ACF and use ARFDW/ACF's trademarks and intellectual property to perpetrate a fraud on ARFDW/ACF's members and the general public by impersonating ARFDW/ACF.   Defendants also used harassment and physical violence to intimidate ARFDW/ACF's membership, stole funds from ARFDW/ACF's bank accounts, and even perpetuated their fraudulent conduct in ongoing civil proceedings in Courts throughout California.

81.     The Imposter Central Committee also attempted to influence and intimidate ARFDW and ACF members by issuing summary expulsions and suspensions of nearly 100 active members who rejected the false narratives and simultaneously planned a new "Regional Convention" in which all ARFDW and ACF members who spoke out against the unlawful actions taken by the Imposter Central Committee would not be permitted to attend.

82.     Remarkably, one appointed member of the Imposter Central Committee, Steven Dadaian, a California attorney, was so concerned regarding the actions proposed to be taken and taken by the Imposter Central Committee that he

resigned on or before January 11, 2021, shortly after his appointment. He was subsequently (unilaterally) replaced on the Imposter Central Committee by Defendant Karo Khanjian.

### *Formation of Corporations to Masquerade as ARFDW/ACF*

83.     An integral element of Defendants' scheme to overthrow and masquerade as ARFDW/ACF and steal their funds and membership was the formation of new corporations with confusing similar names to the ARFDW/ACF.

84.     On February 8, 2021, Melkon Melkonian, an Imposter Central Committee member and an attorney licensed by the State Bar of California, filed Articles of Incorporation with the California Secretary of State for a new (nonprofit public benefit) corporation with an intentionally and confusingly similar name to the ARFDW, entitled "Armenian Revolutionary Federation WUSA, Inc."

85.     Conspicuously, these Articles listed as the corporation's principal place of business Mr. Melkonian's law firm address, only to be subsequently updated a month later (in a Statement of Information filed with the California Secretary of State) to an address in Panorama City, California, linked to an auto body upholstery supply business named "Vic's," owned by Defendant Vicken Moses, another Imposter Central Committee member and the ARF Imposter Corporation's CFO.

86.     In the Articles, Mr. Melkonian wrote that the purpose of the corporation was to "foster public awareness and support to Armenian American issues of concern through cultural, educational, civic and social programs" (i.e., the same mission as the ARFDW).  A true and correct copy of the Articles are attached hereto as **Exhibit 4**.

/ / /

87.    As set forth below, Defendants would later hold out this entity, operating out of an auto body shop in Panorama City, as none other than the long-standing charitable organization of the ARFDW to solicit and divert funds from the public.

88.    The Statement of Information filed by Mr. Melkonian conspicuously names the following officers of the corporation, with himself as its agent for service of process:

    i.   Daron Kachatourian (Chief Executive Officer)
    ii.  Rostom Aintablian (Secretary)
    iii. Vicken Moses (Chief Financial Officer)

89.    A true and correct copy of the Statement of Information is attached hereto as **Exhibit 5**.

90.    Two of these officers, Mr. Aintablian and Mr. Moses (aka Babikian) are also Imposter Central Committee members.

91.    Like the ARF Imposter Corporation, Mr. Melkonian also set up two separate entities to impersonate the ACF.

92.    Specifically, on March 25, 2021, Mr. Melkonian incorporated entities with the names ACF Central WUSA, Inc. and ACF Chapters WUSA, Inc. which were intended to mirror the ACF (and were also registered as nonprofit Public Benefit Corporations, for the purported purpose to "foster public awareness and support of Armenian American issues").

93.    Attached hereto as **Exhibit 6** are true and correct copies of the Articles of Incorporation for these two corporations (the ACF Imposter Corporations).

94.    The ACF Imposter Corporations also bear the same business address as the ARF Imposter Corporation (i.e., Defendant Vicken Moses's auto body supply shop in Panorama City, California).

/ / /

*Theft of Organizational Information*

95.     To get its unlawful message out and mislead ARFDW/ACF's membership, as detailed below, among the first acts of the Imposter Enterprise was a concerted effort to improperly seize the ARFDW's database of information (including membership list), and seize control of its operational systems (including email servers and social media profiles), all which occurred approximately within two weeks of the Emergency Regional Convention specified above.

96.     First, shortly after the Emergency Regional Convention, the ARFDW's server was accessed and an attempt was made to change the password to the server, which housed all of ARFDW's corporate information, including, among other things, ARFDW's entire membership list.

97.     While the password for the server was actually changed, fortunately, the ARFDW was able to retake possession of the server, but not before the entire membership lists for the ARFDW and ACF was stolen, and their historical archive of emails was lost.

98.     The membership lists, comprised of over 1,300 names and contact information, was then utilized by Defendants to communicate with ARFDW's members under the guise of representing the Central Committee, as exemplified below.

*Theft of ARFDW Facebook Page*

99.     In conjunction with the theft of the ARFDW's entire membership list, Defendants seized control of ARFDW's Facebook profile, and then, as detailed below, used the page to disseminate false and misleading information about the ARFDW, deceive ARFDW's members into believing that the ARF Imposter Corporation was the

same as the ARFDW, and disparage the Central Committee members. The circumstances surrounding these actions are as follows:

100. Before the appointment of the Imposter Central Committee, ARFDW members Alik Ourfalian and Toros Kejejian were administrators for the public ARFDW Facebook page, which has thousands of followers.

101. Following the unlawful edict by the ARF Bureau, Defendants, through and with the assistance of Imposter Central Committee member Vicken Sosikian, took possession of the page and then removed Ms. Ourfalian and Mr. Kejejian as administrators.

102. Mr. Sosikian managed this feat by utilizing his prior position on a committee of the ARFDW to set up a Business Account for the ARFDW through Facebook's Business Manager platform.

103. Then, as administrator of the Business Account, Mr. Sosikian had ARFDW's administrator rights changed so the duly elected Central Committee could not access it and put the account in the possession of the Imposter Enterprise, managed by the Imposter Central Committee.

104. Defendants' theft is even brazenly confirmed via Facebook's reporting policies. Specifically, as part of Facebook's corporate transparency rules, Facebook now lists the corporate organizations making public statements in public Facebook profiles, and as of July 2021, lists the ARF Imposter Corporation, Armenian Revolutionary Federation WUSA, Inc., (incorporated by the Imposter Central Committee Defendants in February 2021) as the page's proprietor, as follows (despite the fact that the page was

/ / /

/ / /

created on January 11, 2013):



105.   Making matters worse, when the ARFDW's real Central Committee attempted to create an alternate Facebook page to get out its message, Defendants had their agents create posts to Facebook and elsewhere calling the real Central Committee's new Facebook page a "fake" and directing members of the ARFDW to only follow the stolen social media page and website.

106.   The following is one such example:



/ / /

1

***Theft of ARFDW Domain***

2      107.   A similar occurrence, as took place with ARFDW's Facebook profile, took

3   place with ARFDW's domain.

4      108.   Specifically, the ARFDW purchased and held (for many years) the domain

5   arfwus.org which it used for emails.

6      109.   The password for this account was changed shortly following the

7   Emergency Regional Convention.

8      110.   This was made possible as the domain was managed by Vache Thomassian,

9   an ARFDW member and an individual subscribing to the Imposter Central Committee's

10  propaganda, who, acting as an agent for the Imposter Enterprise, changed the domain

11  password.

12      111.    As the ARFDW's Central Committee was unable to recover control of the

13  domain, this had the effect of causing the organization to lose much of its access to its

14  historical emails.

15      112.   The ARFDW responded by purchasing a new domain, entitled arfdwus.org.

16      113.   However, in response, the Imposter Central Committee, for the benefit of

17  the Imposter Enterprise, purchased a separate domain, entitled arfwest.org, and has since

18  used it in order to spread their false propaganda, that they are the rightful controlling

19  group of the ARFDW.

20      114.   Even more egregiously, agents for Defendants, through fake social media

21  accounts, have taken to falsely declaring that the ARFDW's new website is a "fake" and

22  improperly redirecting the ARFDW members to the new manufactured account.

23  / / /

24  / / /

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

115.   The following is one such example:



116.   Likewise, the stolen ARFDW Facebook page now directs ARFDW members to the newly set up website for the ARF Imposter Corporation, ARFWest.org. For example, the following is a true and correct screenshot of the stolen Facebook Page which states in its "About" section that the organization's website is http://www.ARFwest.org:



*CSREEDER, PC*
*ATTORNEYS AT LAW*
*LOS ANGELES*

***False Impersonation of ARFDW and ACF and Infringing Use of Trademarks***

117.   Once the Imposter Enterprise seized the ARFDW/ACF membership list, Facebook page, and set up a competing domain, the Imposter Enterprise, through the Imposter Central Committee, began issuing letters and circulars to ARFDW members purporting to represent the true identity of the Central Committee of the ARFDW.

118.   Such letters, remarkably, bore (i) ARFDW's business address (at 104 N. Belmont Street in Glendale, California, as reflected in its Bylaws and in filings with the California Secretary of State) (*See* **Exhibit 7**, Page 1, Article 2) and (ii) ARFDW's trademarks, several of which the ARFDW has used for more than 40 years.

119.   These trademarks include the names "Armenian Revolutionary Federation Western United States," "ARF Western USA," "Armenian Revolutionary Federation-Dashnaktsutiun, Western U.S.A.," "ARF Dashnaktsutiun, Western U.S.A.," "ARFD Western United States," and even the ARFDW's stylized mark (collectively, "ARFDW Marks"), a true and correct copy of which is as follows:



120.   Attached hereto as **Exhibit 8** is one such example of a letter from the Imposter Central Committee, dated January 3, 2021, purporting to "isolate" (i.e., excommunicate) Central Committee members elected at the Emergency Regional Convention, and bearing not only the ARFDW Marks but referencing the ARFDW

and ACF headquarters.

121.  In another example, after a delegation of several Central Committee members visited Armenia in April 2021 to attend to the needs of families of wounded soldiers there, the Imposter Central Committee circulated a letter, dated April 8, 2021, and posted it to the fake website, bearing the ARFDW Marks, and stating the following:

"**NOTICE**

…there is a group of individuals in Armenia who, posing on behalf of the ARF Western US organizational unit, are engaged in seemingly 'humanitarian' activities, that are in reality completely unknown and suspicious to us.  We hereby declare that the aforementioned group has nothing to do with the ARF Central Committee of Western US…."

A true and correct copy of this letter is attached hereto as **Exhibit 9**.

122.  Moreover, as described above, the Imposter Central Committee, through its member Melkon Melkonian, formed the fake "nonprofit" Imposter Corporations in February and March 2021, with names that were intentionally and confusingly similar to ARDFW/ACF, in order to pose as ARFDW/ACF and cause confusion among ARFDW members (resulting in actual confusion).

123.  The names of the Imposter Corporations, Armenian Revolutionary Federation WUSA, Inc., ACF Central WUSA, Inc. and ACF Chapters WUSA, Inc. are designed to mimic the names long used by Plaintiff ARFDW, including "Armenian Revolutionary Federation-Dashnaktsutiun, Western U.S.A." and the shorthand name "ACF" commonly used by and attributed to Plaintiff Armenian Cultural Foundation, and to pose as the entity and its chapters.

124.  Using ARFDW/ACF's marks and posing as ARFDW/ACF, the Imposter Corporations and Imposter Central Committee have sought donations from

ARFDW/ACF's membership and the public and have even directed the ARFDW/ACF's members on the payment of their membership dues in efforts to direct funds intended for ARFDW/ACF to Defendants.

125.   For example, attached hereto as **Exhibit 10** is a true and correct copy of a page from the Imposter Enterprise's website, posted as of April 11, 2021, soliciting donations, while masquerading as ARFDW/ACF.

126.   As a separate example, attached hereto as **Exhibit 11** is a true and correct copy of a letter dated May 23, 2021, wherein the Imposter Central Committee directs ARFDW members to direct the payment of their dues only to chapter heads recently "elected" (and not "excommunicated" by the Imposter Central Committee) to ensure delivery of such funds to the Imposter Enterprise [stating "pay your dues to your gomideh, elected in 2019/2020, if they are still functional or only to the recently appointed gomidehs who have replaced some."].

### *Disruption of ARFDW Business*

127.   To further disrupt normal ARFDW business, Defendants and their agents also physically disrupted meetings and votes of individual chapters shortly following the purported appointment of the Imposter Central Committee.

128.   For example, in February 2021, the Glendale Chapter of the ARFDW was scheduled to hold elections, at the direction of the newly elected Central Committee, during a General Meeting of the chapter to select its gomideh.

129.   The Glendale Chapter had, until that time, been chaired by an individual by the name of Bedig Kazandjian, who was sympathetic to the ARF Bureau and accordingly sided with Defendants in their attempted coup.

130.   The meeting was scheduled for February 26, 2021, in the parking lot adjacent to the ACF Glendale Youth Center where the Glendale ARFDW Chapter operates out of, and great expense was undertaken to make the meeting safe in the wake of COVID-19.  The meeting was organized with a large tent set up with chairs, tables and voting packets for the orderly administration of a vote.

131.   However, a group of approximately 30 men, led by Bedig Kazandjian and Miganoush Melkonian (a member of the Imposter Central Committee), jointly acted to disrupt the vote and meeting (in an attempt to ensure that Bedig Kazandjian was not democratically replaced by someone who was not loyal to the Imposter Central Committee).

132.   Half of the individuals, led by Hovig Saliba, went to the tent before the meeting and threw the carefully set tables and chairs upside down, removed paperwork for the vote that had been laid out amongst the seats, effected a shutdown of electricity to the tent, and destroyed certain sound equipment.

133.   The other half of these disruptors stood guard outside the tent while this was occurring and harassed and intimidated Glendale Chapter members from participating in the vote.

134.   Ultimately, the police department was called and disbursed the unruly group of disruptors, and the remaining members of the Glendale Chapter who were not frightened away completed the vote.

135.   However, incensed by the continuation and formal completion of the vote, the next day, the disruptors, led by Bedig Kazandjian, returned to the scene, disabled security cameras to the ACF Glendale Youth Center, and ransacked and stole various items from the center, including computers, membership lists, bank statements, and

34

COMPLAINT

other organization records.

136.   Subsequently, even more disruptive and violent actions took place.

137.   For example, prior to May 5, 2021, a group of individuals in league with Defendants took possession of the DerOhanessian Community Center located in Montrose, California, which is the base for the La Crescenta Zavarian Chapter of the ARFDW and owned by the ACF.

138.   These individuals refused to permit ARFDW members entrance there, and accordingly, on May 5, 2021, a group of ARFDW members decided to go to the building to determine how the ACF could retake possession of its property from the Imposter Enterprise which was occupying the building.

139.   The group occupying the Center without the ACF's permission was armed with weapons, including clubs, and even had security dogs with them.

140.   Kristapor Kouyumjian, a gentleman of approximately 73 years of age, and a member of the ARFDW heard that there may be a standoff between ARFDW members and individuals who wrongfully were occupying the DerOhanessian Community Center and drove to the center to observe.

141.   Mr. Kouyumjian was physically attacked by several individuals while he was in his car and required immediate medical attention. Upon information and belief, these individuals included Ara Boghossian, Kevork Ashjian, and Mike Keleshian, all persons affiliated with the radical Imposter Central Committee.

142.   Further, upon information and belief, Mr. Kouyumjian was taken to an emergency room in Glendale, California, and was diagnosed as having sustained significant injuries from the attack, which were particularly severe and exacerbated by the fact that he was wearing a hearing aid during the attack.

***Conducting False Fundraisers in the name of ARFDW/ACF and Soliciting Charitable Contributions***

143.   As detailed above, in addition to impersonating the ARFDW online and interfering with its election activities, Defendants used the ARFDW's marks to conduct fake fundraisers, falsely representing that these fundraising activities were being performed on behalf of the ARFDW and ACF.

144.   One such event was conducted on June 16, 2021, in Encino, California with the Imposter Central Committee subsequently posting the following message to the stolen Facebook account, celebrating that they had received more than $150,000 impersonating the ARFDW:

Excerpt:

*The ARF Western US Central Committee would like to thank those who participated in our fundraising event held in Encino yesterday.   More than $150,000 was raised ...*



145.   As reflected herein, these fundraising efforts are continuing.   (*See* Exhibit 10).

146.   Moreover, as detailed below, these and other funds improperly obtained from Plaintiffs have all been used to fund Defendants' continuing misconduct and have been directed to the Imposter Enterprise.

*Imposter Enterprise's Attempt to Divert Charitable Gifts*

147.   The Imposter Central Committee's unlawful conduct has now even pervaded the Courts.

148.   In fact, only a month after the ARF Imposter Corporation was formed, an amended petition was filed in an Estate Probate Proceeding in San Francisco Superior Court, entitled *The Estate of Vartkes Anivian* [SFSC Case Number PES13297374], changing the beneficiary of a residual interest in the Estate of a decedent (who has been deceased since 2013) from ARFDW and ACF to the ARF Imposter Corporation newly formed by Mr. Melkonian and Mr. Aintablian.

149.   The following is an abbreviated summary of this brazen fraud:

150.   *The Estate of Vartkes Anivian* is a probate proceeding that has been pending since 2013.

151.   The attorney handling the probate proceeding is Vicken Sonentz-Papazian, an Imposter Central Committee sympathizer and a co-conspirator in the effort to overthrow the leadership of the ARFDW and divert funds to the newly formed Imposter Enterprise.

152.   Mr. Vartkes Anivian, now deceased, bequeathed in his Will a twenty percent (20%) residual interest in his estate to the "Los Angeles Chapter of the Central Committee of the Armenian Revolutionary Federation of the Western United States."

153.   In numerous filings predating the illegal edict referenced above and the attempted coup by the Imposter Central Committee, Mr. Sonentz-Papazian included an accounting and reporting to the probate Court that the 20 percent residue in the estate was left to the "Los Angeles Chapter of the Central Committee of the Armenian Revolutionary Federation of the Western United States" and would be made out to the

"Armenian Revolutionary Federation Western United States, (incorporated as Armenian Cultural Foundation….)".

154.   However, in April 2021, Mr. Sonentz-Papazian informed Counsel for the ARFDW and ACF that he had amended the petition so that the bequest would instead be made to Defendant "Armenian Revolutionary Federation WUSA, Inc.", the organization that Mr. Melkonian incorporated only months prior on February 8, 2021 and which was not even in existence when the Decedent, Mr. Anivian passed away in 2013.

155.   While providing various facially frivolous reasons for the last-minute change upon fervent objection by Counsel for Plaintiffs, it was apparent that the change was part of an improper scheme between Mr. Sonentz-Papazian and Mr. Melkonian (as admitted in Court filings), and possibly other Defendants, to perpetrate a fraud on the Court.

156.   As is manifestly apparent from the dates and parties involved, the decedent, Mr. Anivian, could not have possibly intended to bequeath part of his estate to an entity that was only newly formed eight years after his death, and it is apparent that the intended beneficiaries were, in fact, ARFDW and ACF.

157.   Attached hereto as **Exhibit 12** are excerpts of filings from the *Estate of Vartkes Anivian* probate proceeding addressing the eleventh hour attempted beneficiary change prior to the probate Court's ruling on a final disbursement of the estate funds.

158.   A hearing in the Estate proceeding on the final distribution of the estate is currently scheduled for July 28, 2021.

/ / /

/ / /

*Outright Embezzlement from ACF Bank Accounts*

159. After setting up the artifices described above, Defendants' misconduct intensified and graduated to outright theft from ACF's various bank accounts.

160. Specifically, Defendants, coordinating with individuals who have direct access to ACF bank accounts at the local levels, had wire transfers initiated from ACF bank accounts and cashiers' checks drawn from these accounts, commencing in April 2021, in the amounts of hundreds of thousands of dollars.

161. These transfers were conspicuously made out of accounts overseen by chairpersons for the San Francisco, La Crescenta and Orange County chapters of the ARFDW (Khatchig Tazian, Mike Keleshian, and Garo Kiledjian, respectively), and each has previously expressed his loyalty to the propaganda disseminated by the Imposter Central Committee.

162. Brazenly, wire transfers appear to have been made to a Wells Fargo account in the name of the recently formed ARF Imposter Corporation, Armenian Revolutionary Federation WUSA, Inc.

163. These unauthorized transfers included the following:

 a. A wire transfer of $192,000, occurring on April 12, 2021, from ACF's Orange County Chapter Bank of America Checking Account, to a Wells Fargo Account in the name of Armenian Revolutionary Federation WUSA, Inc.

 b. A transfer of $100,000 occurring on April 12, 2021, from the San Francisco chapter of the ACF, from two of its First Republic Bank checking accounts, and withdrawn via two separate cashier's checks in the amounts of $25,000 and $75,000; and,

c.  Two separate transfers of approximately $200,000 and $100,000 occurring in or around May 2021, from the La Crescenta Chapter of the ACF, from two Bank of America checking accounts.

**Defamatory Statements**

164.  To add insult to injury, Defendants even set up fake Facebook accounts utilizing the names *Asbed Armen* and *Tashnak Tsakan* in order to make false, outlandish, and defamatory statements regarding Central Committee members of the ARFDW and the ACF and persons associating with them, which in some cases even included overt threats of physical violence.

165.  For example, the account registered to "Asbed Armen" has included the following disparaging posts regarding ARFDW Central Committee members:



a.  On January 2, 2021, this account posted a picture of Dr. Carmen Ohanian, the CEO and Chairwoman of ARFDW (pictured on left) and Avedik Izmirlian, the CEO and Chairman of ACF (pictured on right), with Armenian Prime Minister Nikol Pashinyan (pictured in center), referring to Dr. Ohanian and Mr. Izmirlian as "Traitors";

b.  On March 10, 2021, this account posted to Facebook that the AFRDW Central Committee had "highjacked" Asbarez (the Armenian Media Network), and that these individuals [referring to the Central Committee] are "thugs" and "thieves";



c.  On April 9, 2021, this account posted a picture of Dr. Carmen Ohanian, with text embedded in the photo across Dr. Ohanian's face stating "A pathological liar is someone who lies compulsively";



/ / /

166.   Similarly, the account registered to "Tashnak Tsakan" posted other disparaging and defamatory comments, including, by way of example, the following:

    a. In or around February 2021, this account posted a photo depicting several ACF buildings in Belmont, Glendale, and Hollywood and stated that these buildings are "occupied by a bunch of crooks" [referring to the Central Committee] and accompanied by photos of Dr. Carmen Ohanian, Levon Kirakosian and Vahe Bozoyan.



167.   This account even posted the following overt threat to Central Committee member, Koko Topalian, posting a surveilled photo of him on March 2, 2021, with text stating "Once ARF [Bureau] decides, you cant hide anywhere, changing locks wont



42

COMPLAINT

help."

168.   Certain persons elected to the ARFDW Central Committee during the Emergency Regional Convention were also sent threatening anonymous messages to their cell phones.  For example, in the following text message sent to Harut Mgrditchian on February 23, 2021, the sender threatened the following, "Always remember even if [Bureau] agrees to not punish you, no one will trust you anymore.  Once a traitor always a traitor.  You think you can go to Armenia? Try and see where you will end up."



**FIRST CLAIM FOR RELIEF**

**CIVIL RICO - VIOLATION OF 18 U.S.C. § 1961 ET SEQ.**

**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**

Plaintiffs ARFDW and ACF allege as their First Claim for Relief against All Defendants including DOES 1 through 10, Violation of the Racketeer Influenced and Corrupt Organization Act, as follows:

169.   Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 168 inclusive, of this Complaint as though fully set forth herein.

170. As detailed herein, Defendants are liable for violation of the Racketeer Influenced and Corrupt Organizations Act pursuant to section 18 U.S.C. § 1962, subdivisions (b) and (c).

171. Generally, Defendants, through a series of coordinated, predicate acts, commencing in or around December 2020 and continuing through the present, have engaged in the following list of unlawful conduct proscribed under the Act:

    a. Wire fraud (18 USC § 1343) through the unauthorized transfer of stolen funds via wire transfer from bank accounts in the name of the ACF as well as electronic communications impersonating the ARFDW in fundraising activities directed to the public and communications issued with the intent to defraud the public, raise funds by impersonating the ARFDW, and further Defendants' scheme;

    b. Mail fraud (18 USC § 1341) for the dissemination of fraudulent correspondence bearing the marks of the ARFDW and intended to defraud the public and raise funds by impersonating the ARFDW and directing the payment of dues for the ARFDW as well as further Defendants' scheme; and,

    c. The transportation of stolen money in excess of $5,000 in interstate commerce and the transfer of more than $5,000 as part of a scheme and artifice to defraud (18 USC §§ 2314-2315).

172. Specifically, Defendants engaged in the following pattern of racketeering activity:

    a. As set forth in paragraph 163 hereof, persons working at the direction of the Imposter Central Committee (including Khatchig Tazian, Mike

Keleshian, and Garo Kiledjian) and for the benefit of the Imposter Enterprise, facilitated several withdrawals from bank accounts in the name of the ACF and deposited those funds in accounts set up in the name of the ARF Imposter Corporation.  These actions included:

    i.  A wire transmission of funds on April 12, 2021, in the amount of $192,000 from ACF's Orange County Chapter Bank of America Checking Account (overseen by Garo Kiledijian) to a Wells Fargo Account in the name of Armenian Revolutionary Federation WUSA, Inc.;

    ii.  Two transfers in or around May 2021, in amounts of approximately $200,000 and $100,000 made from the Bank of America Checking Account associated with ACF's the La Crescenta Chapter (overseen by Mike Keleshian), to a Wells Fargo Account in the name of Armenian Revolutionary Federation WUSA, Inc.;

    iii.   Two cashier's checks, issued on April 12, 2021, in the amounts of $25,000 and $75,000 were withdrawn from two First Republic Bank checking accounts in the name of the San Francisco chapter of the ACF (overseen by Khatchig Tazian), and, upon information and belief deposited in accounts held in the name of the Imposter Enterprise.

b.  Additionally, as evidenced in paragraphs 99 through 126, and 144 and Exhibits 10 & 11 hereto, Defendants (including the Imposter Central Committee and ARF Imposter Corporation) circulated letters and

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

circulars via mail and electronically, as well as made statements online, purporting to represent the ARFDW to its membership, not only to usurp control over ARFDW/ACF's organization but to engage in fake charitable fundraising activity and divert membership dues in Plaintiffs' organization to Defendants.

c. To date, the Imposter Central Committee, for the benefit of the Imposter Enterprise, has issued no less than 34 circulars and 141 letters, sent via email and U.S. mail, as well as text messages, to ARFDW's and ACF's members and chapters since Defendants' scheme began. Moreover, as noted in paragraph 7 hereof, chapter members, to which electronic communications were directed, reside in multiple different states outside of California, including Arizona, Nevada, and Texas. Accordingly, the communications sent by Defendants described herein were transmitted interstate.

173. In addition to the foregoing, as alleged herein (including in paragraphs 129 to 135, 136 to 142, and 164 to 168, hereof), the following individuals assisted Defendants in furthering their scheme through physical and verbal intimidation and harassment: Bedig Kazandjian, Hovig Saliba, and Miganoush Melkonian (through the organized disruption of ARFDW meetings), Ara Boghossian, Kevork Ashjian, and Mike Keleshian (through the battery of an ARFDW member), and persons posing as Asbed Armen and Tashnak Tsakan, whose identities are still under investigation (issuing disparaging and defamatory statements of Plaintiffs' Central Committee members online and sending threatening text messages).

/ / /

174.   As further detailed herein, ARFDW/ACF as well as non-parties, including Plaintiffs' elected Board Members and third parties have been injured as a result of the actions detailed herein.  In particular, the funds improperly stolen from Plaintiffs' bank accounts are no longer available to ARFDW/ACF to engage in their charitable works and the Services offered by ARFDW/ACF.

175.   The acts specified herein have also injured the public who have donated funds to the Imposter Enterprise posing as Plaintiffs with the expectation that such funds would be used towards Plaintiffs' social programs.

176.   As detailed herein, the individual members of the Imposter Central Committee as well as the officers of the Imposter Corporations all have an interest in and control over the enterprise.  The control of the officers is plainly set forth in the organizational documents filed with the California Secretary of State and the control and influence of the Imposter Central Committee is reflected by the fact that all actions have been performed by them, at their direction, and/or for their express benefit.

177.   Moreover, each of the Defendants have participated directly or indirectly, in the pattern of racketeering activity described herein.

178.   The acts described herein were continuous and interrelated, with the shared goal of acquiring, through illegal means, the assets and property of ARFDW/ACF for the benefit and use of Defendants (through the Imposter Corporations and to promote their agenda).  Each of the acts used similar methods (including false statements regarding the rightful leadership of ARFDW/ACF and the theft of corporate property), with similar results.

179.   Without intervention by this Court, the unlawful activity described herein is threatened to and substantially certain to continue.  In fact, the Imposter Central

Committee is currently planning on holding its own "Regional Convention" from July 15, 2021 to July 18, 2021 to try to "elect" a Central Committee after purporting to purge approximately 100 active members from the ARFDW/ACF ranks through fake public expulsions and suspensions, thereby ensuring that the only participants in the so-called Regional Convention will be supportive of its attempt to take over the organization by deceiving the ARFDW/ACF members into believing that the Imposter Corporations are the real ARFDW and ACF.

180.   The acts of Defendants were achieved through each working together for the aforementioned ends and their interrelationship with one another is both formal (in many cases, as purported corporate officers of fake corporations formed to engage in theft and fraud, and fake committee members purporting to be controlling Central Committee members) as well as informal, with a shared goal of furthering their common illegal interest, the complete seizure of ARFDW/ACF's membership in order to divert funds and property to their scheme.

181.   Defendants intended to commit the predicate acts described herein despite having knowledge that those acts were illegal.   In fact, remarkably, several of the principal bad actors referenced herein are attorneys registered with the State Bar of California.

182.   The illegal acts of Defendants patently have had an effect on interstate commerce, given the diversion of funds intended for charitable purposes to organizations formed to mislead the public and transferred among different national US banks.

183.   Plaintiffs were directly and proximately damaged by Defendants' actions in an amount to be determined at trial, and which currently exceeds $ 740,000.00.

/ / /

**SECOND CLAIM FOR RELIEF**

**CONSPIRACY TO COMMIT CIVIL RICO**

**VIOLATION OF 18 U.S.C. § 1962(d)**

Plaintiffs ARFDW and ACF allege as their Second Claim for Relief against All Defendants, including DOES 1 through 10, Conspiracy to Commit Violation of the Racketeer Influenced and Corrupt Organization Act, as follows:

184.   Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 183, inclusive, of this Complaint as though fully set forth herein.

185.   As detailed herein, Defendants are liable for the violation of the Racketeer Influenced and Corrupt Organizations Act under sections 18 U.S.C. § 1962, subdivision (d) for conspiring to violate those acts referenced under the First Claim for Relief and performing a number of overt acts in furtherance of the conspiracy.

186.   Defendants conspired with one another to defraud the public and ARFDW/ACF's membership into believing the Imposter Corporations are ARFDW/ACF for purposes of diverting funds and donations intended for Plaintiffs and stealing funds belonging to Plaintiffs.

187.   Defendants each participated in the scheme to defraud, which was planned and executed with precision on several fronts, as evidenced by the coordinated timing of the theft of organizational controls, including Plaintiffs' access to social media and emails, the incorporation of fake imposter entities, the changing of beneficiary claims in probate estates pending in the State, and the theft of ACF corporate funds, the reference to all members of the Imposter Central Committee in communications directed to ARFDW/ACF's membership, as well as the physical disruption of Plaintiffs' election activities.

188.   The acts of Defendants described herein had the goal of furthering Defendants' racketeering enterprise to violate the Act.

189.   Conspiring Defendants, knowing their fellow conspirators (due to the close associations between existing and former ARFDW and ACF members, directors and officers), were aware of all of the details of the conspiracy (which was publicly disseminated through circulars, mailers and emails improperly claiming that the Imposter Central Committee was now in possession and control of Plaintiffs), and through their actions sought to further the conspiracy.

190.   As a direct and proximate consequence of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $740,000, said damages to be proven at the time of trial.

**THIRD CLAIM FOR RELIEF**

**(LANHAM ACT VIOLATION)**

**[TRADEMARK INFRINGEMENT & UNFAIR COMPETITION]**

**(15 U.S.C. § 1125(a))**

Plaintiffs allege as their Third Claim for Relief against Defendants Rostom Aintablian, Karo Khanjian, Hrayr Garabetian, Stepan Boyajian, Knar Kitabjian, Gev Iskajyan, Miganoush Melkonian, Mkhitar Moradian, Vicken Moses (aka Vicken Babikian), Vicken Sosikian, Melkon Melkonian (collectively, the "Imposter Central Committee Defendants"), Armenian Revolutionary Federation WUSA, Inc., ACF Central WUSA, Inc., and ACF Chapters WUSA, Inc. (the "Imposter Companies"), and

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

DOES 1-10, Trademark Infringement and Unfair Competition under the Lanham Act, as follows:

191.   Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 190, inclusive, of this Complaint as though fully set forth herein.

192.   The ARFDW is the owner of the common law trademarks "Armenian Revolutionary Federation Western United States," "ARF Western USA," "Armenian Revolutionary Federation-Dashnaktsutiun, Western U.S.A.," "ARF Dashnaktsutiun, Western U.S.A.," "ARFD Western United States" and also represented by the stylized mark referenced in paragraph 119 hereof (collectively, the "ARFDW Marks").

193.   The ACF is the owner of the common law trademarks "Armenian Cultural Foundation" and "ACF" (collectively, the "ACF Marks").

194.   The ARFDW has used the ARFDW Marks exclusively and continuously in interstate commerce since at least 1976 (with the exception of the "ARFD Western United States" mark being used since at least 2013 and the stylized mark being used since at least 2019) in connection with providing charitable services to advance the rights, culture, heritage and interests of the Armenian community, and to promote cultural and educational programs and initiatives for Armenian Americans (the "Services").  Accordingly, the ARFDW has priority in the ARFDW Marks.

195.   Similarly, the ACF has used the ACF Marks exclusively and continuously in interstate commerce since at least 1976 in connection with providing the same or similar Services. As such, the ACF has priority in the ACF Marks.

196.   Plaintiffs have invested substantial time, effort and financial resources promoting their respective marks in connection with the marketing of their non-profit entities and services in interstate commerce, including through various social media

platforms.

197.   The ARFDW Marks and ACF Marks have become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Plaintiffs and their non-profit entities, the quality of their services, and their goodwill.

198.   The consuming public recognizes the ARFDW Marks and the ACF Marks and associates it with ARFDW/ACF, and the ARFDW Marks and the ACF Marks are inherently distinctive as applied to ARFDW/ACF's charitable work and services.

199.   Further, the Plaintiffs' marks have gained secondary meaning through the longevity of their use, and are particularly well-known in the Armenian community.

200.   Notwithstanding Plaintiffs' established rights in their respective marks, the Imposter Central Committee Defendants, for the benefit of the Imposter Enterprise, fraudulently obtained control of Plaintiffs' marks, and adopted and used the ARFDW Marks and ACF Marks in interstate commerce in connection with the identical services offered by Plaintiffs and advertised through the same channels (in fact, Defendants stole ARFDW's Facebook profile and membership contact list to advertise the Services).

201.   Additionally, Defendants adopted and used the marks, Armenian Revolutionary Federation WUSA, Inc., ACF Chapters WUSA, Inc., and ACF Central WUSA, Inc. (collectively, the "Confusing Marks"), which are confusingly similar to Plaintiffs' respective marks, in interstate commerce in connection with identical services offered by Plaintiffs.

202.   Without Plaintiffs' consent, Defendants have used and continue to use the ARFDW Marks, ACF Marks and the Confusing Marks in connection with the identical services or advertising of the identical services offered by Plaintiffs, which are in direct

competition with Plaintiffs.

203.   Upon information and belief, the Imposter Central Committee Defendants and the Imposter Corporations have engaged in their infringing activity despite having actual knowledge of Plaintiffs' superior rights to and their use of their respective marks.

204.   Defendants' unauthorized use of the ARFDW Marks, ACF Marks and the Confusing Marks in interstate commerce as described above constitutes trademark infringement and unfair competition under 15 U.S.C. § 1125(a) and has caused or is likely to cause consumer confusion, mistake, or deception, and lead to the false impression that Plaintiffs are affiliated with, endorse or sponsor Defendants, which will damage Plaintiffs and the public.

205.   Plaintiffs have no control over the quality of services provided by Defendants and because of the intentional source of confusion caused by Defendants along with its theft of the ARFDW Marks and ACF Marks, Plaintiffs have lost control over their valuable goodwill.

206.   Upon information and belief, Defendants have advertised their business and offered their services using the ARFDW Marks, ACF Marks, and the Confusing Marks with the intention of misleading, deceiving or confusing consumers as to the origin of their services and of trading on Plaintiffs' reputation and goodwill. Defendants' use of the ARFDW Marks, ACF Marks and the Confusing Marks constitutes willful, deliberate, and intentional trademark infringement.

207.   In fact, Defendants have already raised at least $150,000 purporting to represent the Plaintiffs, demonstrating that there has been and continues to be actual confusion among consumers as a result of the unauthorized use of the ARFDW Marks, ACF Marks and the Confusing Marks.

208.   As a direct and proximate result of Defendants' trademark infringement and acts of unfair competition, Plaintiffs have suffered and will continue to suffer loss of income, profits, and goodwill and Defendants have and will continue to unfairly acquire income, profits, and goodwill.

209.   Defendants' trademark infringement will cause further irreparable injury to Plaintiffs if Defendants are not restrained by this Court from further violation of Plaintiffs' rights and Plaintiffs have no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### (LANHAM ACT VIOLATION)

### [FALSE ADVERTISING] (15 U.S.C. § 1125)

Plaintiff ARFDW alleges as its Fourth Claim for Relief against the Imposter Central Committee Defendants, ARF Imposter Corporation, and DOES 1-10, False Advertising under the Lanham Act, as follows:

210.   ARFDW re-alleges and incorporates herein by reference paragraphs 1 through 209, inclusive, of this Complaint as though fully set forth herein.

211.   As detailed herein, Defendants have made numerous false statements of fact in commercial advertisements about the ARFDW and its Services.

212.   Indeed, as set forth herein, Defendants have been wrongfully and falsely claiming that they represent the true identity of the ARFDW, that they are representatives of ARFDW, that ARFDW's real Central Committee is comprised of "traitors," "crooks," "liars," "thieves," and "thugs," and that Plaintiffs and their agents do not rightfully speak for ARFDW.

/ / /

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

213. Additionally, Defendants have been wrongfully and falsely representing that they are the true and proper proprietors of the Services of ARFDW, while supporting their claims through the unauthorized use of ARFDW Marks and the Confusing Marks.

214. Defendants' false statements are likely to mislead or confuse the public and lead to the false impression that ARFDW is affiliated with, endorses or sponsors Defendants, which will damage both ARFDW and the public.

215. The deception is material, in that it is likely to influence ARFDW and ACF members and persons considering utilizing the Services of these corporations or donating to their causes.

216. In fact, there has been and continues to be actual confusion among consumers as a result of the unauthorized use of the ARFDW Marks because Defendants have already been able to raise at least $150,000 purporting to identify as the ARFDW.

217. Defendants caused the false statements to enter interstate commerce through the channels set forth herein, including in circulars, mailers, via email, on public websites set up by Defendants, and on social media.

218. As a direct and proximate result of Defendants' false and misleading statements, Plaintiff has suffered and will continue to suffer loss of income, profits and goodwill and Defendants have and will continue to unfairly acquire income, profits, and goodwill.

219. Defendants' false and misleading statements have been made willfully, with knowledge of their falsity and a disregard for the truth, and Defendants are joint and several tortfeasors, as each substantially contributed to the injuries described herein.

220. Defendants' actions will cause further irreparable injury to Plaintiff if Defendants are not restrained by this Court from further violation of Plaintiff's rights

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

and Plaintiff has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

## (LANHAM ACT VIOLATION)

## [FALSE DESIGNATION OF ORIGIN] (15 U.S.C. § 1125)

Plaintiff ARFDW alleges as its Fifth Claim for Relief against the Imposter Central Committee Defendants, ARF Imposter Corporation, and DOES 1-10, False Designation of Origin under the Lanham Act, as follows:

221.   ARFDW re-alleges and incorporates herein by reference paragraphs 1 through 220, inclusive, of this Complaint as though fully set forth herein.

222.   As set forth above, ARFDW is the owner of the ARFDW Marks and identifies itself by and through use of its marks and terms including "ARF West," "Armenian Revolutionary Federation Western United States," and "ARF DASHNAKTSUTYUN, WESTERN U.S.A," among others.

223.   As further set forth herein, Defendants have, without authorization, copied and used ARFDW designations, including the ARFDW Marks, ARFDW's name, marks, and words, terms and devices and false designations of origins in interstate commerce associated with the advertising of their services.

224.   Specifically, Defendants have been wrongfully and falsely representing that they represent the true identity of ARFDW and that they are responsible for the achievements of ARFDW.

225.   Additionally, Defendants have been wrongfully and falsely representing that they are the true and proper proprietors of the Services of ARFDW, while supporting their claims through the unauthorized use of ARFDW Marks and the Confusing Marks.

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

226.   Defendants caused the false statements to enter interstate commerce through the channels set forth herein, including in circulars, mailers, via email, on public websites set up by Defendants, and on social media.

227.   Defendants' unauthorized use of the ARFDW Marks is likely to mislead or confuse the public and lead to the false impression that the identical services provided by Defendants originated within ARFDW or that ARFDW is affiliated with, endorses or sponsors Defendants, which will damage both ARFDW and the public.

228.   Defendants have already been able to raise at least $150,000 by falsely identifying itself as the ARFDW, demonstrating that there has been and continues to be actual confusion among consumers as a result of Defendants' unauthorized use of the ARFDW Marks.

229.   Plaintiff ARFDW has no control over the quality of services provided by Defendants and because of the source confusion caused by Defendants along with its theft of the ARFDW Marks, ARFDW has lost control over its valuable goodwill.

230.   As a direct and proximate result of Defendants' false and misleading statements, Plaintiff has suffered and will continue to suffer loss of income, profits, and goodwill and Defendants have and will continue to unfairly acquire income, profits, and goodwill.

231.   Defendants' actions will cause further irreparable injury to Plaintiff if Defendants are not restrained by this Court from further violation of Plaintiff's rights and Plaintiff has no adequate remedy at law.

/ / /

/ / /

/ / /

**SIXTH CLAIM FOR RELIEF**

**(FALSE ADVERTISING)**

**[CAL. BUS. & PROF. CODE § 17500 ET. SEQ.]**

Plaintiffs ARFDW and ACF allege as their Sixth Claim for Relief against the Imposter Central Committee Defendants, Imposter Corporations, and DOES 1-10, False Advertising under Cal. Bus. & Prof. Code § 17500 *et seq.*, as follows:

232.   Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 231, inclusive, of this Complaint as though fully set forth herein.

233.   As detailed herein, Defendants have made numerous false statements of fact in commercial advertisements about the ARFDW and its services and regarding services offered by Defendants. In fact, Defendants purport to be performing those services offered by ARFDW and that such services originated with them.

234.   Indeed, as set forth herein, Defendants have been wrongfully and falsely claiming that they represent the true identity of ARFDW and the correct representatives of ARFDW as Defendants have purported that ARFDW's Central Committee is comprised of "traitors," "crooks," "liars," "thieves," and "thugs," and that Plaintiffs and their agents do not rightfully speak for ARFDW.

235.   Defendants' false statements are likely to mislead or confuse the public and lead to the false impression that ARFDW is affiliated with, endorses or sponsors Defendants, which will damage both ARFDW and the public.

236.   These advertisements were circulated through various mediums, including, without limitation, circulars, mailers, via email, on websites set up by Defendants and on social media.

/ / /

237.   The advertisements were and are disseminated to and received by the public in California.

238.   Defendants have engaged in the advertising herein alleged with the intent to induce the public to provide donations relating to the Services performed by Plaintiffs to Defendants.

239.   Defendants' advertising was untrue or misleading and likely to deceive the public in that Defendants did not actually represent the ARFDW and further did not intend to employ funds raised by the advertising to causes authorized by the AFRDW and ACF but instead with the intent to divert the funds to their own purposes.

240.   In making and disseminating the statements herein alleged, Defendants knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading and so acted in violation of Business and Professions Code Section 17500 et seq.

241.   Plaintiffs have suffered an injury in fact and have lost money as a result of the violations alleged in this Complaint, including the diversion of funds intended for ARFDW and ACF.

242.   Unless restrained by this Court, Defendants will continue to engage in untrue and misleading advertising, and Plaintiffs have no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF

### (VIOLATION OF UNFAIR BUSINESS PRACTICES ACT)

### [CAL. BUS. & PROF. CODE § 17200 ET. SEQ.]

Plaintiffs ARFDW and ACF allege as their Seventh Claim for Relief against All Defendants and DOES 1-10, Unfair and Unlawful Business Practices under Cal. Bus. &

Prof. Code § 17200 *et seq.*, as follows:

243. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 242, inclusive, of this Complaint as though fully set forth herein.

Unfair Business Practices

244. Defendants' conduct threatens an incipient violation of antitrust law, violates the policy or spirit of those laws as its effects are comparable to or the same as a violation of the law, and otherwise significantly threatens or harms competition.

245. As set forth above, Defendants' Misconduct includes, without limitation:

a. Impersonating Plaintiffs' entities through the formation of Imposter Corporations and using Plaintiffs' trademarks, name, goodwill, and even its social media profile to disseminate false and misleading information regarding Plaintiffs to the public and to Plaintiffs' membership in a scheme to raise and misdirect funds intended for Plaintiffs to Defendants;

b. Participating in a coordinated scheme to steal Plaintiffs' property, including by initiating or authorizing wire transfers and withdrawing funds from Plaintiffs' bank accounts, ransacking offices in which Plaintiffs' chapters conduct business and converting personal property there, and misrepresenting to Courts and in other legal documents the relationships between Plaintiffs and Defendants (or lack thereof);

c. Knowingly and maliciously interfering with Plaintiffs' efforts to conduct their operations, including by disrupting General Meetings of its local chapters through force and intimidating (both verbally and

COMPLAINT

physically) Plaintiffs' members from peacefully participating in Plaintiffs' nonprofit work, circulating false propaganda, and promoting disparaging and defamatory statements regarding Plaintiffs and their Boards of Directors; and,

d. Materially misrepresenting the origin and source of communications by Defendants and ascribing such messaging to Plaintiffs.

Unlawful Business Practices

246. Defendants' conduct described herein also constitutes recognized violations of law and acts proscribed by law, statute, regulation, and common law, including, without limitation, that such conduct constitutes: theft (Cal. Penal Code § 484); receipt of stolen property (Cal. Penal Code § 496); conversion; fraud; intentional interference with contract and prospective economic advantage; Civil RICO and Conspiracy to commit RICO (18 U.S.C. § 1961 et seq.), with its underlying predicate acts including Mail Fraud [18 USCS § 1341] and Wire Fraud [18 USCS § 1343], among others, and Violations of the Lanham Act (including for false advertising, false designation of origin and unfair competition), as outlined herein.

247. As a direct and proximate cause of Defendants' actions, Plaintiffs' interests have been irreparably injured.

248. As such, Plaintiffs are entitled to restitution and injunctive relief, as determined at the time of trial, in addition to such other remedies set forth herein.

/ / /

/ / /

/ / /

**EIGHTH CLAIM FOR RELIEF**

**(BREACH OF FIDUCIARY DUTY)**

Plaintiffs ARFDW and ACF allege as their Eighth Claim for Relief against Defendants Melkon Melkonian, and DOES 1-10, Breach of Fiduciary Duty, as follows:

249.   Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 248, inclusive, of this Complaint as though fully set forth herein.

250.   As set forth herein, Melkon Melkonian, one of the principal actors in forming the Imposter Corporations, was an Advisor to the ARFDW and ACF and a member of the elected Central Committee immediately preceding the vote of December 28, 2020, and therefore owed fiduciary obligations to these corporations.

251.   These fiduciary responsibilities were assumed voluntarily by this Defendant, and included the duty of utmost good faith and undivided loyalty, among other things.

252.   However, as set forth herein, Defendant breached his fiduciary obligations by, among other things, forming fake corporations for the purposes of attempting to divert and steal assets and funds belonging to or intended for Plaintiffs, and participating with the other Imposter Central Committee members in creating Imposter Corporations to pass themselves off as Plaintiffs.

253.   Defendant failed to act in good faith, in the best interests of ARFDW and ACF, and with such care as an ordinarily prudent person in a like position would use under similar circumstances.

254.   As a proximate cause of the breaches of fiduciary duty of care, good faith and loyalty by Defendant, Plaintiffs incurred significant damages of no less than $740,000 to date as well as other damages, subject to proof at trial.

COMPLAINT

# NINTH CLAIM FOR RELIEF

## (AIDING AND ABETTING BREACH OF FIDUCIARY DUTY)

Plaintiffs ARFDW and ACF allege as their Ninth Claim for Relief against Defendants Daron Kachatourian, Rostom Aintablian, Vicken Moses (aka Vicken Babikian) and DOES 1-10, Aiding and Abetting Breach of Fiduciary Duty, as follows:

255.   ARFDW re-alleges and incorporates herein by reference paragraphs 1 through 254, inclusive, of this Complaint as though fully set forth herein.

256.   As set forth above, there was a fiduciary relationship, voluntarily assumed by Defendant Melkon Melkonian owed to Plaintiffs.

257.   This resulted in a duty of utmost good faith and undivided loyalty.

258.   Also as detailed above, Defendant Melkon Melkonian breached his fiduciary obligations to Plaintiffs.

259.   Defendants Daron Kachatourian, Rostom Aintablian, and Vicken Moses had actual knowledge of the existence of the duty owed to Plaintiffs, including by virtue of their membership in the ARFDW and the fact that Mr. Kachatourian formerly served in an officer role for the organization.

260.   Notwithstanding the foregoing, Defendants Daron Kachatourian, Rostom Aintablian, and Vicken Moses provided Defendant Melkon Melkonian with substantial assistance and/or encouragement in aid of his breach of fiduciary duty, including in forming, organizing and operating the imposter corporation, Armenian Revolutionary Federation WUSA, Inc., and disseminating false and misleading information regarding Plaintiffs, as detailed herein (including through Mr. Aintablian' and Mr. Moses' participation in the Imposter Central Committee with Mr. Melkonian).

/ / /

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

261.   As a proximate result of aiding and abetting and/or participating in the breach of duty of Defendants, Plaintiffs incurred significant damages of no less than $740,000 to date as well as other damages, subject to proof at trial.

262.   The conduct of these Defendants was a substantial factor in causing Plaintiffs' injuries, as alleged herein.

## TENTH CLAIM FOR RELIEF

### (TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS)

Plaintiff ARFDW alleges as its Tenth Claim for Relief against the Imposter Central Committee Defendants, ARF Imposter Corporation, and DOES 1-10, Tortious Interference with Contractual Relations, as follows:

263.   ARFDW re-alleges and incorporates herein by reference paragraphs 1 through 262, inclusive, of this Complaint as though fully set forth herein.

264.   As set forth herein, under its Bylaws, each member of the ARFDW was to pay dues to the organization or its affiliate in order to fund the social programs and initiatives of ARFDW and ACF.

265.   The agreements between ARFDW and its membership were valid and in existence when violated by the acts of the Imposter Central Committee Defendants, operating on behalf of the Imposter Enterprise, and who, with knowledge of the existence of these agreements, and intending to cause a breach of these agreements, misrepresented their authority over the ARFDW to redirect the obligations and dues owed under the contracts for their own benefit.

266.   Defendants' conduct caused actual breach or disruption of ARFDW's contractual relationships with its members, including the payment of dues to Defendants

and/or the nonpayment of dues to Plaintiffs.

267.   Plaintiff ARFDW has been substantially damaged by the aforementioned conduct in an amount according to proof at trial.

268.   As Defendants' actions were committed with malice, oppression and/or fraud, Plaintiff is entitled to punitive damages in an amount according to proof at trial.

## ELEVENTH CLAIM FOR RELIEF

## (TORTIOUS INTEFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

Plaintiffs ARFDW and ACF allege as their Eleventh Claim for Relief against All Defendants and DOES 1-10, Tortious Interference with Prospective Economic Advantage, as follows:

269.   Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 268, inclusive, of this Complaint as though fully set forth herein.

270.   As set forth herein, Plaintiffs had and have an expectancy interest in receiving funds raised for the benefit of their social programs and initiatives, including from and among its members.

271.   As also detailed herein, Defendants, through various means, attempted to disrupt and did disrupt the existing and continuance of relationships between Plaintiffs, its members, and its donors.

272.   As exemplified herein, this was manifested by impersonating Plaintiffs to divert its funds to imposter corporations, and, in fact, Defendants did raise funds impersonating Plaintiffs and have also filed statements in Court proceedings in efforts to divert proceeds intended for Plaintiffs.

273.   It is manifest by Defendants' actions summarized herein, that they were aware of Plaintiffs' expectancy interests, knew injuries were substantially certain to occur from their conduct, and nevertheless engaged in the conduct.

274.   Plaintiffs have been directly damaged in an amount to be determined at trial.

275.   Defendants' actions were committed with malice, oppression and/or fraud, and Plaintiffs are therefore entitled to punitive damages.

## TWELFTH CLAIM FOR RELIEF

### (CONVERSION)

Plaintiffs ARFDW and ACF allege as their Twelfth Claim for Relief against All Defendants, including DOES 1-10, Conversion, as follows:

276.   Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 275, inclusive, of this Complaint as though fully set forth herein.

277.   At all times herein mentioned, Plaintiffs were the rightful owners and intended beneficiaries of funds, which were improperly converted by Defendants, in the following amounts, in or around the following dates:

a.  April 12, 2021: $ 192,000

b.  April 12, 2021: $ 100,000

c.  May 2021:        $ 300,000

d.  June 16, 2021:  $ 150,000

278.   As detailed herein, Defendants through unauthorized transfers and misrepresentation, converted these sums to their own use, and specifically to the imposter entity Armenian Revolutionary Federation WUSA, Inc. and, upon information

and belief, the ACF Imposter Corporations.

279. Plaintiffs have been substantially harmed as a result of the thefts described herein, in the amount of at least $ 742,000.  Plaintiffs' investigation is ongoing and may identify additional instances of theft.

280. Defendants' acts alleged above were willful, wanton, malicious, and oppressive, were undertaken with the intent to defraud, and justify the award of exemplary and punitive damages.

## THIRTEENTH CLAIM FOR RELIEF

### (ACCOUNTING)

Plaintiffs ARFDW and ACF allege as their Thirteenth Claim for Relief against All Defendants, including DOES 1-10, an Accounting, as follows:

281. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 280, inclusive, of this Complaint as though fully set forth herein.

282. As detailed above, due to the various improper and unlawful activities of Defendants that conspired together to utilize, without authority, the persona of Plaintiffs to raise funds and convert personal property belonging to Plaintiffs, the full scope of money converted, funds raised, and money diverted is presently unknown and cannot be ascertained without an accounting, since the information necessary to determine that amount is, except as detailed herein, within the exclusive knowledge of the Defendants.

283. As set forth herein, Plaintiffs presently know of at least $742,000 that has been improperly converted.

284. In light of the relationship between the parties and the circumstances detailed herein, Plaintiffs' legal remedies are inadequate without a proper accounting to

determine the full scope of its injuries.

## FOURTEENTH CLAIM FOR RELIEF

### (PRELIMINARY INJUNCTION)

Plaintiffs ARFDW and ACF allege as their Fourteenth Claim for Relief against All Defendants, including DOES 1-10, Preliminary Injunction, as follows:

285. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 284, inclusive, of this Complaint as though fully set forth herein.

286. Due to the acts of Defendants described herein, Plaintiffs seek a Temporary Restraining Order and/or a Preliminary and Permanent Injunction, enjoining the following acts:

   a. Defendants conducting any meetings purporting to be the ARFDW or ACF or any confusingly similar entity, or holding themselves out to others, including the membership of Plaintiffs as being these entities or having due authority to act on their behalf, including, but not limited to, at any "Regional Convention" of the ARFDW/ACF;

   b. Defendants using trademarks belonging to Plaintiffs, including, without limitation, ARFDW's Marks and ACF's Marks referenced herein;

   c. Defendants asserting, announcing, utilizing, claiming, advertising, or communicating with the general public and the ARFDW/ACF's membership using the following names (or other confusingly similar names): ARFDW, ARF Dashnaktsutyun, ARF Western USA, Armenian Revolutionary Federation WUSA, ACF, and Armenian Cultural Foundation WUSA;

d.  Defendants disseminating advertising or marketing purporting to be raising funds or speaking for Plaintiffs; and

e.  Defendants' occupation or interference with ARFDW meetings and votes or the due management and administration of real property owned by ACF.

287.   Plaintiffs further seek a Mandatory Injunction Ordering Defendants to immediately:

a.  Turn over the domains currently held by Defendants purporting to represent Plaintiffs (including, without limitation, arfwest.org and arfwus.org);

b.  Turn over the ARFDW Facebook page and profile to Plaintiffs;

c.  Return all stolen and improperly raised and diverted funds to the ACF;

d.  Return all stolen personal property, including electronic files, of ARFDW and ACF, including, without limitation, membership lists, computers, bank statements, and other organization records; and,

e.  Turn over all ACF and ARFDW bank accounts bearing the federal tax ID numbers of these corporations.

## FIFTEENTH CLAIM FOR RELIEF
### (DECLARATORY RELIEF)

Plaintiffs ARFDW and ACF allege as their Fifteenth Claim for Relief against All Defendants, including DOES 1-10, Declaratory Relief, as follows:

288.   Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 287, inclusive, of this Complaint as though fully set forth herein.

289.   As set forth herein, Defendants: formed the Imposter Corporations; utilized, without authorization, Plaintiffs' marks, domain, and social media profiles to hold themselves out as Plaintiffs or authorized representatives of Plaintiffs; and engaged in harassment and intimidation, all in a scheme to disrupt Plaintiffs' operations and defraud the public and Plaintiffs' members by posing as Plaintiffs.

290.   Defendants have been successful in disrupting the operations of Plaintiffs, as detailed herein, and causing confusion amongst the public and Plaintiffs' members, as evidenced by funds raised by Defendants posing as Plaintiffs.

291.   Based on the foregoing, an actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties with respect to the governance, control, and administration of Plaintiffs' organizations.

292.   Accordingly, among the other forms of relief sought herein, Plaintiffs seek a judicial determination of their rights and duties, including a declaration that:

   a.  Defendants' conduct, specified herein, is unlawful;

   b.  Defendants, and each of them, have no authority to hold themselves out as Plaintiffs or to hold out the Imposter Central Committee as the duly elected Board of Directors of ARFDW or ACF;

   c.  Defendants have no authority to control or administer ARFDW/ACF and no purported appointment by any third-party group, including without limitation, the ARF Bureau, has any force or effect on the governance of Plaintiffs' organizations.

   d.  Plaintiffs are the intended recipients of all funds directed to or intended for: the Armenian Revolutionary Federation-Dashnaktsutiun, Western U.S.A, ARF Western United States, ARF Western U.S., the "Los

COMPLAINT

Angeles   Chapter   of   the   Central   Committee   of   the   Armenian
Revolutionary Federation of the Western United States," the Armenian
Cultural   Foundation,   ACF,   and   such   other   derivations   thereof   as   may
pertain   to   Defendants'   efforts   to   divert   funds   from   Plaintiffs   to
Defendants and the Imposter Corporations.

293.   A judicial declaration is necessary and appropriate at this time under the
circumstances in order that Plaintiffs may continue to operate and govern their respective
organizations without further interference from Defendants.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs ARFDW and ACF now pray for judgment as follows:

**On the First Claim for Relief for CIVIL RICO against All Defendants, including DOES 1 through 10:**

1.    For an Order:

   a.    Causing all Defendants to divest themselves of the enterprise;

   b.    Imposing   reasonable   restrictions   on   the   future   activities   or
   investments of Defendants including, but not limited to, prohibiting
   any person associated with or acting in connection with Defendants
   from   engaging   in   the   same   type   of   endeavor   engaged   in   by
   the enterprise, including, without limitation, purporting to represent
   Plaintiffs   for   any   purpose,   including   raising   funds   or   initiating
   transfers of funds from any accounts held in the name of Plaintiffs;

COMPLAINT

2.      For treble damages (pursuant to 18 USC § 1964(c));

3.      For attorneys' fees and costs (pursuant to 18 USC § 1964(c));

4.      For prejudgment interest in an amount to be determined at the time of trial, as applicable;

5.      For costs of suit herein incurred; and,

6.      For such other and further relief as this Court deems proper.

**On the Second Claim for Relief for CONSPIRACY TO COMMIT CIVIL RICO against All Defendants, including DOES 1 through 10:**

1.      For an Order:

   a.      Causing all Defendants to divest themselves of the enterprise;

   b.      Imposing reasonable restrictions on the future activities or investments of Defendants including, but not limited to, prohibiting any person associated with or acting in connection with Defendants from engaging in the same type of endeavor engaged in by the enterprise, including, without limitation, purporting to represent Plaintiffs for any purpose, including raising funds or initiating transfers of funds from any accounts held in the name of Plaintiffs or conspiring to commit these actions;

2.      For treble damages (pursuant to 18 USC 1964(c));

3.      For attorneys' fees and costs (pursuant to 18 USC 1964(c);

4.      For prejudgment interest in an amount to be determined at the time of trial, as applicable;

5.      For costs of suit herein incurred; and,

6.     For such other and further relief as this Court deems proper.

**On the Third Claim for Relief for LANHAM ACT VIOLATION ASSOCIATED WITH TRADEMARK INFRINGEMENT against Imposter Corporations, Imposter Central Committee Defendants, and DOES 1-10:**

1.     Actual, compensatory, restitutionary, and/or incidental damages and treble damages pursuant to 15 USC § 1117;

2.     For an accounting of Defendants' profits;

3.     For prejudgment interest in an amount to be determined at the time of trial;

4.     For corrective advertising;

5.     For attorneys' fees and costs;

6.     For such other statutory damages as recognized under the Lanham Act;

7.     For injunctive relief, including, without limitation, enjoining Defendants' use of Plaintiffs' ARFDW Marks, ACF Marks and Defendants' Confusing Marks and from identifying as Plaintiffs or purporting to speak on behalf of Plaintiffs, including in commercial advertisements and generally to the public;

8.     For costs of suit herein incurred;

9.     For such other and further relief as this Court deems proper.

**On the Fourth Claim for Relief for LANHAM ACT VIOLATION ASSOCIATED WITH FALSE ADVERTISING against the ARF Imposter Corporation, Imposter Central Committee Defendants, and DOES 1-10:**

1.     For actual, compensatory, restitutionary, and/or incidental damages in an amount to be determined at trial;

2.      For treble damages (pursuant to 15 USC 1117);

3.      For lost profits and disgorgement of Defendants' profits;

4.      For injunctive relief, including, without limitation, enjoining Defendants' use of Plaintiffs' ARFDW Marks and Defendants' Confusing Marks, and from identifying as Plaintiffs or purporting to speak on behalf of Plaintiffs, including in commercial advertisements and generally to the public;

5.      For prejudgment interest in an amount to be determined at the time of trial;

6.      For attorneys' fees and costs;

7.      For costs of suit herein incurred;

8.      For such other and further relief as this Court deems proper.

**On the Fifth Claim for Relief for LANHAM ACT VIOLATION ASSOCIATED WITH FALSE DESIGNATION OF ORIGIN against the ARF Imposter Corporation, Imposter Central Committee Defendants, and DOES 1-10:**

1.      For actual, compensatory, restitutionary, and/or incidental damages in an amount to be determined at trial;

2.      For treble damages (pursuant to 15 USC § 1117);

3.      For lost profits and disgorgement of Defendants' profits;

4.      For injunctive relief, including, without limitation, enjoining Defendants' use of Plaintiffs' ARFDW Marks and Defendants' Confusing Marks, and from identifying as Plaintiffs or purporting to speak on behalf of Plaintiffs, including in commercial advertisements and generally to the public;

5.      For prejudgment interest in an amount to be determined at the time of trial;

6.      For attorneys' fees and costs;

7.    For costs of suit herein incurred;

8.    For such other and further relief as this Court deems proper.

**On the Sixth Claim for Relief for FALSE ADVERTISING UNDER CAL. BUS. & PROF. CODE § 17500 ET. SEQ against Imposter Corporations, Imposter Central Committee Defendants, and DOES 1-10:**

1.    For lost profits and disgorgement of Defendants' profits;

2.    For injunctive relief, including, without limitation, enjoining Defendants' use of Plaintiffs' ARFDW Marks, ACF Marks and Defendants' Confusing Marks, and from identifying as Plaintiffs or purporting to speak on behalf of Plaintiffs, including in commercial advertisements and generally to the public;

3.    For prejudgment interest in an amount to be determined at the time of trial;

4.    For costs of suit herein incurred;

5.    For such other and further relief as this Court deems proper.

**On the Seventh Claim for Relief for VIOLATION OF UNFAIR BUSINESS PRACTICES ACT [CAL. BUS. & PROF. CODE § 17200 ET. SEQ.] against All Defendants, including DOES 1-10:**

1.    For restitution in an amount to be determined at the time of trial;

2.    For prejudgment interest in an amount to be determined at the time of trial;

3.    For injunctive relief, including, without limitation, as to those Unfair and Unlawful Business Practices specified in paragraphs 243 through 248 hereof;

4.    For costs of suit incurred herein;

1        5.     For such other and further relief as this Court deems proper.

**On the Eighth Claim for Relief for BREACH OF FIDUCIARY DUTY against Defendants Melkon Melkonian, and DOES 1-10:**

1.     For actual, compensatory, restitutionary, and/or incidental damages in an amount to be determined at trial;

2.     For restitution;

3.     For constructive trust;

4.     For injunctive relief, as appropriate;

5.     For prejudgment interest in an amount to be determined at the time of trial;

6.     For attorneys' fees and costs;

7.     For costs of suit herein incurred;

8.     For such other and further relief as this Court deems proper.

**On the Ninth Claim for Relief for AIDING AND ABETTING BREACH OF FIDUCIARY DUTY against Defendants Daron Kachatourian, Rostom Aintablian, Vicken Moses, and DOES 1-10:**

1.     For actual, compensatory, restitutionary, and/or incidental damages in an amount to be determined at trial;

2.     For restitution;

3.     For constructive trust;

4.     For injunctive relief, as appropriate;

5.     For prejudgment interest in an amount to be determined at the time of trial;

6.     For attorneys' fees and costs;

COMPLAINT

7.    For costs of suit herein incurred;

8.    For such other and further relief as this Court deems proper.

**On the Tenth Claim for Relief for TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS against the ARF Imposter Corporation, Imposter Central Committee Defendants, and DOES 1-10:**

1.    For actual, compensatory, restitutionary, and/or incidental damages in an amount to be determined at trial;

2.    For prejudgment interest in an amount to be determined at the time of trial;

3.    For punitive damages;

4.    For costs of suit incurred herein;

5.    For such other and further relief as the court may deem proper.

**On the Eleventh Claim for Relief for TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE against All Defendants, including DOES 1-10:**

1.    For actual, compensatory, restitutionary, and/or incidental damages in an amount to be determined at trial;

2.    For prejudgment interest in an amount to be determined at the time of trial;

3.    For punitive damages;

4.    For costs of suit incurred herein;

5.    For such other and further relief as the court may deem proper.

/ / /

/ / /

COMPLAINT

**On the Twelfth Claim for Relief for CONVERSION against All Defendants, including DOES 1-10:**

1.      For actual, compensatory, restitutionary, and/or incidental damages in an amount to be determined at trial;

2.      For constructive trust;

3.      For prejudgment interest in an amount to be determined at the time of trial;

4.      For punitive damages;

5.      For costs of suit herein incurred;

6.      For such other and further relief as this Court deems proper.


**On the Thirteenth Claim for Relief for an ACCOUNTING against All Defendants, including DOES 1-10:**

1.      For an accounting of all sums stolen and improperly held by Defendants, including raised by Defendants purporting to be or act on behalf of Plaintiffs, transferred and withdrawn from Plaintiffs' bank accounts, and otherwise rightfully owing and belonging to Plaintiffs.


**On the Fourteenth Claim for Relief for PRELIMINARY INJUNCTION against All Defendants, including DOES 1-10:**

1.      For a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction enjoining Defendants, and their officers, agents, joint venturers, employees, affiliates, representatives, and/or anyone acting on their behalf, from taking the actions set forth hereinabove in paragraph 286, and Ordering a Mandatory Injunction for those items set forth hereinabove in paragraph 287, which are incorporated herein by this

reference;

2.      For an Order requiring Defendants to show cause why Defendants should not be enjoined as set forth herein during the pendency of this action;

3.      For costs of suit incurred herein;

4.      For such other and further relief as the Court may deem just and proper.


**On the Fifteenth Claim for Relief for DECLARATORY RELIEF against All Defendants, including DOES 1-10:**

1.      For an order decreeing the rights and obligations of the parties, including Plaintiff and Defendants, as well as unnamed and unknown parties, relating to the issues specified herein, including as set forth under paragraph 292 hereof;

2.      For costs of suit incurred herein;

3.      For such other and further relief as the Court may deem proper.


**Demand for Jury Trial**

Plaintiffs demand a trial by jury on all issues so triable.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT

DATED: July 9, 2021

Respectfully submitted,

**CSREEDER, PC**

By: _Christopher S. Reeder_
    Christopher S. Reeder
    Elan Bloch

**JEFFER MANGELS BUTLER &
MITCHELL LLP**

By: /s/ Dan P. Sedor
    Dan P. Sedor
    Vatche Zetjian

**ATTORNEYS FOR PLAINTIFFS, ARF
DASHNAKTSUTYUN, WESTERN
U.S.A. AND ARMENIAN CULTURAL
FOUNDATION**